to the next case and that is Standley v. Nelms case number 22-35833. Good morning, Your Honor. My name is Stephen Jonkis. I have two cases here this morning. This is the first, Standley v. Nelms. It deals with mask mandate by a school and the second one is Johnson v. Brown, which deals with the Oregon's vaccine mandate. The legal theories are very similar, baseline legal theories. In this case, Chad Standley and Jennifer Standley's son, and they're all three here in the courtroom today, his son was kicked off his basketball team at Nelson High School. The key question in this case is how the law applies to a mandate to wear an experimental medical device. I wanted to start if I could ask a question about the First Amendment claims because you make this claim of compelled speech, which I think runs into some difficulty with Fair v. Rumsfeld, but I'm wondering whether you're not, are you also making an intermediate scrutiny claim, whether under O'Brien, incidental speech regulation, time, place, and manner, or something else? What are your First Amendment arguments? My First Amendment argument is that it's a, the mask itself has no possible utility, and so the purpose of requiring people to wear a mask is to show their force, their subservience to the government. I mean, but under Rumsfeld, when the state has sort of a generally applicable law that everyone has to do this, you have to let the military recruiters on campus. The court has said that compliance with those kind of broad requirements isn't viewed as sort of adopting the state's message. It isn't a live free or die on the license plate. It's just because people wouldn't reasonably read that compliance as indicating, you know, speech that promotes the government's message, and so that particular theory seems to run into a Rumsfeld problem. Well, I think it is a live free or die question. I think it is a live free or die question. The government is forcing people to comply with something that shows their subservience to the government, and the masking has a lot of symbolism. It is inherent in masking. It's the source of why we talk about a gag order. I think, isn't the test whether that's the primary role of, you know, of the action, and you may have some, there may be some tangential speech implicated here, but I was struck by your comment that there's no possible benefit from masking. I mean, as someone who defied the mask, wearing a mask, I have a hard time still understanding that strong of a statement. There's some benefit to it, and so I don't see this as a, to the extent that you have some sort of tangential First Amendment implications, that doesn't seem to be the bulk of what's I'd say it's not the bulk of what's going on, but I disagree with you, Honor. It has absolutely no benefit. As a matter of fact, it's harmful, and we pled that, so it's not something Well, I understand that there are those who believe that, and I understand there are those who think that, but the government doesn't, the government has a right to at least, you know, test this out in some way, right? I mean, it's not like there was no medical support for the fact that masks. Yes, there was no medical support, Your Honor, and we pled that there was no medical support. Let me go back to the First Amendment. Are you asserting that you have a First Amendment claim where it's interfering with the plaintiff's propagation of his message? Because one claim you're making is, it's compelled speech, I'm being forced to repeat the government's message, and I've explained why I have some issues with that. Are you also making a claim that he has a message, and it's being impeded, and that's a First Amendment claim? No, it's an indoctrination claim. You're not arguing that, you know, he is, you know, wants not to wear a mask to make a message that I'm free of masks, and I'm, you're not making that claim? I think that's the logical inverse, but when I was, when we were talking about this claim, when we drafted this claim, it was about indoctrination, that the purpose of this was to indoctrinate people to follow government orders, no matter how ridiculous the government order is. I'm trying to understand if you're making any, if you're just making a strict scrutiny claim, or whether there's any component of your claim that would trigger intermediate scrutiny. I'm afraid I'm not up to speed on that, the disturbance between those two, Your Honor. I mean, you get to intermediate scrutiny if it's an incidental regulation, has incidental burdens on speech under O'Brien, or it's a time, place, and manner under, you know, the time, place, and manner cases. That would be how you'd get to intermediate, but I'm, so you're not making any kind of intermediate claim? No, because I think it's a serious indoctrination issue. It's not like wearing a school uniform, which has no message associated with it. It is definitely intended to indoctrinate. You know, whether it's an experimental device, and the source of being an experimental device... Counsel, I've got to be honest. I don't understand your argument that this is an experimental medical device. I mean, what case can you point to that makes that clear? I mean, that has to have far more intrusion into, you know, personal autonomy than just wearing a mask. The fact that it is an emergency use authorized device. That's... What, can you show me any case that has said that wearing a mask is, you know, or something that doesn't, like, go into your body, or is an experimental medical device? The FDA defines it as experimental medical device. But that doesn't, with all due respect, the FDA has no bearing on what the Constitution says. Well, they don't get to define what the Constitution says. But they get to define whether it's an approved or unapproved product. I give you that, but I want to know a case that says, under the Constitution, this is an experimental medical device. There aren't any. This is a novel claim. Okay. There aren't any. But the... Isn't it also true that your client was given great accommodation, and they came in and said, look, just wear it during certain times. Let's, you know, let's not totally... You don't need to totally comply with this. They tried to accommodate him, and that didn't work. He just refused in all circumstances. He wouldn't even wear another chin. That shows you the irrationality of the requirement. If wearing it under your chin is going to satisfy it, it means it's no purpose for a mask. That's what that demonstrates. Just, you know, just knuckle under and do what you're told. Okay. Do you want to reserve time? Yes, Your Honor. Thank you. Thank you. May it please the court. Blake Fry for the defendants and appellees. I'd like to take, at least start, to address an issue that I think is somewhat unique to this case in comparison to the other COVID-related cases that are on the docket this is that have been filed. As I said, I'm an attorney for the defendants, and the defendants here are a school district and two school district employees. So, in other words, I'm not an attorney for the state of Oregon. And yet, I found myself in the somewhat unusual position of defending a state law from an express challenge. In another case, we have the state defendants that actually intervened, but they didn't in this case. No, the state filed an amicus brief, precisely for this reason, that the claims here are expressly a facial challenge to the validity of a state regulation, a state law. And so, as you noted, the plaintiff filed the, I'm sorry, the state of Oregon filed an amicus brief to support the state law rather than relying solely on myself, a school district attorney, to defend the state law. Which brings me to the first reason for the district court's dismissal. Because the claims are a challenge to a state law, the plaintiff sued, in effect, the wrong party by suing the school district employees. I understand that because, you know, in the whole ex parte young context, or when we have the kind of ex parte young federal counterpart, you know, usually it's like the president or the, you know, some official implements a policy, and then we enjoin all the people who enforce it. And so I don't understand why the fact that the state promulgated the policy means we can't enjoin the people who are actually there enforcing it on the ground. We seemingly do that all the time. We don't enjoin the president when he, you know, puts out an order, and then we enjoin all those equitable power under the ex parte young or inherent equitable authority type theory. The reason is that these are Section 1983 claims. And in order to state Section 1983 claims against, in this case, a municipal entity, and municipal defendants, certain requirements have to be met. Otherwise, they're just not amenable to sue. No, but these individuals are actually applying state power to two people that is alleged to be in violation of the Constitution. They are persons under 1983. 1983, as to those persons, subsumes the ex parte young type action and equitable power action. I don't understand why we can't enjoin, stop, stop violating constitutional rights. We get to do that regardless of, you know, the fact that somebody else promulgated the policy. You're the one doing it. In a Section 1983 claim against individuals, we have two separate analysis. One is for the entity, the district, and one is for the individuals. The Section 1983 claims assert a claim for damages and a claim for injunctive relief, which, by the way, is also moot because this order has been rescinded long ago. But in the context... The mootness is very different here. Yes. Because there's a lot of force to the argument that under Brock, we're not going to see VAX mandates again. But we're already seeing MAS mandates be reimposed by some school districts in the country and by other entities. And so I'm not sure that the Brock type showing can be made with respect to MAS. And this order leaves you with the authority to reimpose it. Well, again, these are Section 1983 claims. And as applied to the individuals, even if this is a claim for an injunctive relief and not just a claim for damages, the Section 1983 requirements and defenses are still available to the individual defendants. And as to the individual defendants... Right. So they could assert qualified immunity to damages. Yes. And to the claim for injunctive relief because those were... What would be the defense to injunctive relief? Well, what I just mean by that is that the... Other than the merits, I mean. Yeah. What I mean by that is that the Section 1983 requirements, before any defendant is immutable to suit, apply just as equally to claims for damages as claims for injunctive relief, including their entitlement to qualified immunity. And as for the entity, a municipal entity cannot be vicariously liable for the act of... They have Monell. And the fact that they didn't promulgate the policy may let them off under Monell. But the individuals who are actually where the rubber hits the road can be enjoined from doing that if what they're implementing is unconstitutional. Again, except for the fact here that the regulation is no longer in effect and hasn't been in effect for a year and a half. And so the only... The school closure in Brock, what was done was the school district was left the option to reinstate it. And then the kind of showing that it's never going to come back, which in voluntary cessation, you have a heavy burden to do. I don't see how you can meet the Brock standard when it's mass because it's just not on the same footing. That because mass are coming back in some places is not dead the way school closures were, the way VAX mandates, they're argued in the other case, were. As the... There is an order. There's a health authority order rescinding the mass mandate. Schools are free and have always been free to impose their own versions of some sort of mass mandate. And we don't know what those would look like. But am I wrong in thinking the order when it was revoked reaffirmed that the school districts could reimpose it? At the discretion... No, not... Did they retain that authority? Not... No, not precisely. What the order rescinding it said is that school districts can... Are not precluded from requiring their own masking requirements. That's different than saying that schools can reimpose the state regulation. So they can impose some other masking requirements that are not the same as the state regulation. Right. But then you would have more liability. If a district board adopts... Right now, you're... I think you don't have monetary liability because you were just implementing what the state was requiring. But if they adopt their own, you're just saying that that... Is this only an answer in the mootness context that... No, this is in the context of whether any of these defendants are amenable to suit under Section 1983, including the district who, in this case, was only following a higher law. In your hypothetical scenario where a school board adopts a masking, some sort of masking requirement for a school district, that would be the kind of municipal action that would subject the district to liability under Section 1983. Correct. I don't think there's a disagreement about that. I think the question is, you seem to be saying that even the individuals can't be sued because of the state policy. And I don't see that. I mean, they can be enjoined, right? I think that's what Judge Collins is saying. Okay. So they could be enjoined, except that the regulation has been rescinded long ago. And the complaint doesn't include any allegations that go towards whether there's a likelihood that... You're just saying they could be sued on that, but it's moot as to that because the only relief would be injunctive relief. And they can't have that because the policy's been rescinded. That's a fair assessment. Could I ask you a question about the merits of the First Amendment? And it may be based on the colloquy with your opposing counsel that intermediate scrutiny is out of the case. But, you know, if we were to look at this through the lens of intermediate scrutiny rather than strict scrutiny, where a mask impedes communication because it covers half your face and blocks expression and makes it very difficult for people to be heard, that would be something you would think classically would be reviewed under O'Brien. Would you survive under intermediate scrutiny under O'Brien? Well, I disagree that intermediate scrutiny would apply for at least two reasons. First of all, there was an allegation, at least something along those lines, that masks... And the district court seemed to resolve that issue adversely. It does discuss intermediate scrutiny and rejects it in the district court order. Well, but there was a claim like that in the complaint, but that claim has been dropped. The only claim... Which claim? The claim of it impedes... Yeah, I thought that was not before us. Well, correct. That's right. And what I'm saying, the only First Amendment claim... That could have implicated intermediate scrutiny. I disagree because I understand you disagree that it does, but that one seems more likely to, let's say it this way, that one seems more likely to trigger intermediate scrutiny than the claim that's... There is case law which says that the First Amendment is not implicated when what's being affected is the manner of communication and not any restriction on speech itself. ...time, place, and manner, which also is intermediate scrutiny. So, you know, putting, forcing people to have to cover half their face, which impedes, seriously impedes communication, it would be subject to intermediate scrutiny under either O'Brien or time, place, and manner. And so my question, I just want to know the answer so I know the full lay of the land here, if we're going to write an opinion. Do you think that that would survive intermediate scrutiny? Well, I do think so. I think that the district court, assume for the sake of argument that intermediate scrutiny was applied, and then address that in its opinion. I disagree that even in that scenario, where again, this claim has been abandoned, that that would implicate the First Amendment in any way. That's why the district court, but was it abandoned before the district court's opinion? Did the district court address intermediate scrutiny because of this particular claim? Yes. Okay. But that's since been abandoned. There was no challenge in the opening statement. You state your argument that it's been abandoned, then that may be right. But I still, I just, I want to understand because, you know, if we write something here, I want to understand the parameters. These are important issues. And I want to understand the state's position, or not the state, your client's position on, you know, how you would satisfy intermediate scrutiny. Well, frankly, I'm not up to speed on the intermediate scrutiny test because since that wasn't an issue, I would just defer again to the district's court ruling, which does discuss intermediate scrutiny. And I agree with what the district court said on that matter. The problem with intermediate scrutiny, as I understand it, is that it differs from rational basis in that the governmental defendant has a burden to show that the measures actually promote the substantial government interest being asserted, which would work in the real world and that mass mandates work in the real world. And we certainly couldn't do that on 12B-6. I believe that the test, and this is on sort of off the top of my head, is that the restriction in this, the assumed restriction on speech in this case has to serve a compelling government interest rather than just a legitimate government interest. And I think there's no question that responding to a pandemic is a compelling government interest. And I think the second part of that test is, in the First Amendment, there is a least restrictive way to serve that compelling government interest. And if the, if the goal here is to stop the spread of COVID because masks are effective, I don't know what a least restrictive way to do that would be aside from requiring masks or face shields, which is also. But I think the question is whether that can be resolved at a motion to dismiss stage because they, they have alleged in their complaint that masks are counterproductive. And so, why wouldn't that be enough to say that they're, that that gets passed for purposes of the complaint? Then you get into a discussion about, you know, what the evidence actually shows. Well, just because I don't think that the effectiveness is necessarily part of the test when we're talking about a First Amendment challenge decided under intermediate review. If the government adopts a policy that, I mean, I'm trying to think of an example where it's just clearly has no, yes, you have a compelling state interest, but they then initiate a policy that has no bearing on actually addressing that, wouldn't you agree that that The difficulty here, I think it's like, it's like saying, well, you got to wear blue shirts because blue shirts are going to protect us against COVID. And everybody would say, what, what does this policy have anything to, everybody knows wearing a blue shirt isn't going to protect you against COVID. But if that's the allegation in the complaint, aren't we stuck with that? Well, again, I just, I disagree that the test is necessarily one where you examine the effect in this, in the context of a First Amendment violation. And I'm not sure how that part of the test in a intermediate scrutiny analysis, where the claim is an alleged First Amendment violation, looks to whether there's a least restrictive means to accomplish the compelling interest. And I'm not sure how that part of the test fits into this hypothetical scenario. So, if there's no further questions, that's my time. And I just asked the district, or I just asked the court to affirm the district court's ruling. Substantially over your time. But we caught that by asking you questions. As I can see. Thank you. Thank you. Yeah, Your Honor, a couple things. On whether the masks are useful at all. I mean, the authorities before COVID said they were not. The District Court, for example, said don't use masks. This is on a motion to dismiss though, right? Correct. So, I mean, rather than litigating that, I think the better point is that that's the allegation you've made in your complaint. Correct. So. Correct. But you agree that, I mean, that you are not, the issue before us is not whether there was a restriction on actually communicating speech. It's the  Yes. Okay. Yes, Your Honor. As for the mask rule, I'm not sure there was a rescinded. I think it had an on-off switch and they just turned it off. And as to the individuals who are defendants, you know, what their position is different from what it would be for a private plaintiff, by a private defendant. If they were coerced by the state, they would be a state actor to follow a legal state law. And their position is because they were coerced by the state, they're not liable. They can't be held liable. That's inconsistent with the whole concept of state actions. A government do have case law that says they can't be held liable under Monell. The question here is the individual defendants still theoretically could. Well, I think I briefed that and I'm not exactly remembering the briefing on that specific issue. But. Okay. I think we're at time here. Okay. I think we have your arguments. Thank you to both counsel. I guess we'll see you again. And the case is now submitted. The court's going to take a five-minute recess. Let everybody get set up and we'll come back for to continue this journey. Thank you.
judges: HAWKINS, NELSON, COLLINS